# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN RICHARD COUDRIET, | ) | |
|     Plaintiff, | ) | Civil Action No. 11-185 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | |
| ANTHONY VARDARO, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
as to the motion to dismiss
filed by Defendants Alizzeo, Lewis, DiGiacomo and Schultz

## I. RECOMMENDATION

It is respectfully recommended that the motion to dismiss filed by Defendants Alizzeo, Lewis, DiGiacomo and Schultz [ECF No. 44] be granted. The Clerk of Courts should be directed to terminate these Defendants from the docket.

## II. REPORT

### A. Relevant Procedural History

Plaintiff, a state inmate acting *pro se*, originally filed this civil rights action on September 1, 2011. Plaintiff names the following as Defendants to this action: the Honorable Anthony Vardaro of the Crawford County Court of Common Pleas; Warden Brian Coleman; Gary Alizzeo, Esquire; Chief of Police John Rictor; Assistant District Attorney Paula DiGiacomo; District Attorney Francis Schultz; Nurse Matthew Lewicki; Dr. Mark Casteel, Dr. Michael Herbik; Warden Tim Lewis; Bail Bond Agent Trace McCracken; Magistrate Judge Michael

Rossi of the Magisterial District Court; Counselor Jamiee Gaster; P.S.S. Debra Husarchik; Psychologist Gary Gallucci; and Psychiatrist Peter Saavedra.[1]

Plaintiff alleges that his state and federal constitutional rights have been violated in numerous ways by the named Defendants and seeks relief under 42 U.S.C. § 1983. ECF No. 5. This Report and Recommendation is limited to a discussion of the allegations involving Defendants Gary Alizzeo (Plaintiff's court-appointed criminal defense attorney on PCRA), Tim Lewis (Warden of the Crawford County Correctional Facility), Paula DiGiacomo (an Assistant District Attorney) and Francis Schultz (the District Attorney of Crawford County).

Plaintiff provides a lengthy and detailed explanation of his version of events that led up to his arrest and conviction in the Crawford County Court of Common Pleas around 2006. Plaintiff alleges that his arrest, prosecution, detention, and conviction were illegal, not based upon probable cause, and were violative of his constitutional rights. Plaintiff alleges that DiGiacomo and Schultz prosecuted him without probable cause, relied on an invalid search warrant for collection of his DNA, and enticed the victim-witness to fabricate her testimony. Plaintiff further alleges that Defendant Schultz violated his constitutional rights during his PCRA proceedings in 2009. Plaintiff alleges that Defendant Alizzeo, his court-appointed public defender, misrepresented the facts of his criminal case in a Supplemental PCRA petition and conspired with others to violate Plaintiff's constitutional rights. ECF No. 5.

Plaintiff's allegations against Warden Lewis are threefold: Lewis illegally detained him when he relied upon an invalid and illegal court order for Plaintiff's commitment/detention in the

---

[1] Plaintiff asserts his claims against each of the named Defendants in both their official and individual capacities. To the extent that he seeks to sue these Defendants in their official capacities, such claims should be dismissed as the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); Mt. Healthy City Board of Educ. v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity).

Crawford County Correctional Facility; Lewis arranged for a physical assault on Plaintiff by another inmate and a correctional officer; and, Lewis acted with deliberate indifference toward Plaintiff's medical needs during his detention at the Crawford County Correctional Facility. Id.

As relief for these and other alleged constitutional violations, Plaintiff seeks monetary damages, as well as his freedom from incarceration[2]. Id. at ¶¶ 113-14.

In response to the Complaint, Defendants Alizzeo, Lewis, DiGiacomo and Schultz filed a motion to dismiss. ECF No. 44. Plaintiff filed a brief in opposition to the motion to dismiss. ECF No. 80. Since the filing of the dispositive motion by these Defendants, Plaintiff has twice attempted to amend his complaint. ECF No. 82, 116, 128.

By Order entered March 9, 2012, this Court granted Plaintiff's request for the appointment of counsel and directed the Clerk of Courts to seek legal representation for Plaintiff. ECF No. 121. During the pendency of this process, this case was administratively closed[3] and all filing deadlines were held in abeyance. Following at least three Declinations of Request for Appointment by attorneys who reviewed the pleadings in this case, this Court re-opened this case and informed Plaintiff that he will be representing himself in this matter.

The matters raised in the motion to dismiss by these judicial Defendants are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro se* litigants

---

[2] To the extent that Plaintiff seeks release from incarceration, his claims are not cognizable under § 1983 and his exclusive remedy is a petition for writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) citing Preiser v. Rodriquez, 411 U.S. 475, 489 (1973) and Wolff v. McDonnell, 418 U.S. 539, 554 (1974).

[3] Despite the administrative closing of this case, Plaintiff continued to file pleadings and documents including an appeal to the United States Court of Appeals for the Third Circuit.

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal,

___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Plaintiff has attached pages and pages of exhibits to his pleadings, and these moving Defendants have attached court docket sheets in support of their motion to dismiss. However, the use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

### C. State Actor Requirement – Defendant Alizzeo[4]

As an initial matter, in order to bring suit under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his constitutional rights. Private attorneys, including public defenders, acting on behalf of their clients are not state actors, and therefore, cannot be held liable under § 1983. See Polk County v. Dodson, 454 U.S. 312, 325

---

[4] To the extent that Plaintiff may be attempting to set forth either a legal malpractice or an ineffective assistance of counsel claim against Gary Alizzeo, such claims are not proper § 1983 claims. See generally Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (petition for writ of habeas corpus proper for ineffective assistance of counsel claim); Shaw v. Stackhouse, 920 F.2d 1135 (3d Cir. 1990) (§ 1983 is designed to address Constitutional deprivations, not torts).

(1991) (public defender not a state actor "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); Jordan v. Fox, Rothschild, O'Brien & Frankel, 787 F.Supp. 471, 475 (E.D. Pa. 1992) (attorneys are not state actors by virtue of status as officers of the court). Plaintiff's allegations do not support a § 1983 claim against Gary Alizzeo, Esquire.

"[P]ublic defenders are not immune from § 1983 liability when they conspire with state officials to deprive their client of federal rights." Figueroa v. Clark, 810 F.Supp. 613, 616 (E.D. Pa. 1992); Tower v. Glover, 467 U.S. 914 (1984). Even if Plaintiff's allegations are liberally construed as alleging a conspiracy by the two District Attorneys, the court-appointed public defender, and the two judges also named in the action, Plaintiff's claims fail.

As a general matter, § 1983 claims need not be pled with any greater particularity than any other claims (see Fed.R.Civ.P. 8), but conspiracy claims must be pled with sufficient particularity to provide the defendants with fair notice of the claims against them. Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 986 (E.D. Pa. 1994). "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action... The pleadings standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as is the state court judge and prosecutor in the instant case." Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir.), cert. denied, 513 U.S. 832 (1994). As pled, there is nothing in Plaintiff's allegations to factually support the elements of a conspiracy claim. See Smith v. Sullivan, 2008 WL 482469, at *1 quoting Phillips, 515 F.3d at 231 (at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief.").

7

### D. Prosecutorial Immunity– Defendants DiGiacomo and Schultz

A prosecuting attorney acting in a quasi-judicial role is relieved from liability for acts "intimately associated with the judicial phase of the criminal process," to include "initiating a prosecution and . . . presenting the State's case." Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006) quoting Imbler v. Pachtman, 424 U.S. 409 (1976). Even the "deliberate withholding of exculpatory information is included within the legitimate exercise of prosecutorial discretion." Yarris, 465 F.3d at 137, quoting Imbler, 424 U.S. at 431-32 n. 34. See also Smith v. Holtz, 210 F.3d 186, 199 n. 18 (3d Cir. 2000) (finding that a prosecutor's decision not to disclose exculpatory evidence to defendant's counsel was protected under absolute prosecutorial immunity). Accordingly, Defendants DiGiacomo and Schultz cannot be liable as they are protected by prosecutorial immunity.

Furthermore, Defendant Schultz cannot be liable under the theory of *respondeat superior* for the actions taken by the prosecuting district attorney (here, presumably Defendant DiGiacomo) even if that attorney was under Defendant Schultz's direct supervision. It is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a § 1983 civil rights action. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978). In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005).

### E. Warden Tim Lewis

Plaintiff's allegations against Warden Lewis are threefold: Lewis illegally detained him when he relied upon an invalid and illegal court order for Plaintiff's commitment/detention in the Crawford County Correctional Facility; Lewis arranged for a physical assault on Plaintiff by another inmate and a correctional officer; and, Lewis acted with deliberate indifference toward Plaintiff's medical needs during his detention at the Crawford County Correctional Facility.

### 1. Attempted Assault by Inmate and Correctional Officer

Plaintiff seems to be alleging that Warden Lewis bears responsibility for attempting to arrange an assault on Plaintiff by another inmate and a correctional officer. ECF No. 5, ¶ 40. This attempted assault occurred near the time of Plaintiff's arrest and detention at the Crawford County Correctional Facility in May of 2005.

The federal civil rights laws do not contain a specific statute of limitations § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims. Samerica Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998) (internal citations omitted). Thus, based on Pennsylvania's applicable statute of limitations, a § 1983 claim must be filed no later than two years from the date of the alleged violation. See Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. (Pa.) 1996). In this case, Plaintiffs' original complaint was received by the Clerk of Courts on September 1, 2011. Thus, barring exception, any claims raised by Plaintiff arising from events that occurred prior to September 1, 2009, are barred by the applicable statute of limitations and should be dismissed.

In his opposition brief, Plaintiff does not advance any reason why this Court should waive or equitably toll the statute of limitations in regard to the claim that Defendant Lewis

9

arranged an attempted assault against Plaintiff in May of 2005. Accordingly, the motion to dismiss should be granted in this regard.[5]

### 2. Illegal Detention

Next, Plaintiff alleges that because his arrest and conviction are illegal, his incarceration at Crawford County Correctional Facility by Warden Lewis pursuant to the invalid court orders violates his constitutional rights. In this regard, the actions of Defendant Warden Lewis are insulated from liability by the doctrine of quasi-judicial immunity.

Judicial immunity[6] is an "immunity from suit, not just from an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial officers are immune from suit arising out of their official duties. Stump v. Sparkman, 435 U.S. 349 (1978); Piskanin v. Hammer, 2005 WL 613644 (E.D.Pa., 2005) (applying judicial immunity to "district justice"). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority...." Sparkman 435 U.S. at 356. See also Benn v. First Judicial District, 426 F.3d 233 (3d Cir. 2005) (applying Eleventh Amendment immunity to courts). See also Seigert v. Gilley, 500 U.S. 226, 231 (1991) ("One of the purposes of immunity,

---

[5] Furthermore, Plaintiff has failed to provide factual support for his averment that Defendant Lewis arranged the attempted assault. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho, 423 F.3d at 353, quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell, 436 U.S. 658 (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action).

[6] Absolute immunity is a purely legal question. Banks v. Mozingo, 423 Fed.Appx 123, at *2 (3d Cir. 2011) quoting In Re Montgomery County, 215 F.3d 367, 370 (3d Cir. 2000).

absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."); In Re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000) ("Absolute immunity creates not only protection from liability, but also a right not to stand trial.").

Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, are also immune from suit. See Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772-73 (3d Cir. 2000) (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992).

Officials acting pursuant to a facially valid[7] court order have a quasi-judicial absolute immunity for actions taken to execute that order. Lepre v. Tolerico, 156 Fed.Appx 522 (3d Cir. 2005) quoting Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (holding that employees acting pursuant to a valid bench warrant entitled to absolute immunity); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir. 1967) (holding employees of the judiciary are entitled to absolute immunity when executing judicial orders); Villanueva v. County of Montgomery, 1994 WL 396368, at *2 (E.D. Pa. 1994) (sheriff' deputies absolutely immune from liability arising from the execution of a facially valid bench warrant). See also Richman v. Sheahan, 270 F.3d 430, 436 (7th Cir. 2001) ( "[W]e have recognized absolute immunity for law enforcement officers

---

[7] "Facially valid does not mean lawful[;] [a]n erroneous order can be valid." Abdeo v. Borough of South Plainfield Police Dept., 2010 WL 547603, at *2 (D.N.J. 2010) quoting Wolfe v. City of Pittsburgh, 140 F.3d 236, 240 (3d Cir. 1998).

when the challenged condition [ ... ] was specifically ordered by the judge."); Patterson v. Von Riesen, 999 F.2d 1235, 1240 (8th Cir. 1993) (prison wardens absolutely immune from liability for continuing to incarcerate prisoner pursuant to valid court order); Valdez v. City and County of Denver, 878 F.2d 1285 (10th Cir. 1989) ("[E]nforcing a court order or judgment is intrinsically associated with a judicial proceeding.").

Defendants' motion to dismiss should be granted as to this claim against Defendant Lewis.

### 3. Deliberate indifference to Medical Needs

Finally, Plaintiff alleges that in December 2009/January 2010, while at Crawford County Correctional Facility for a PCRA hearing, a fellow inmate poisoned him with acid-laced vanilla cake. Plaintiff alleges that his "feces or stool was gathering around the acid frosting eating away at the wall of [his] colon until the colon became impacted with stool, feces, and [he] was throwing up food because it would not pass through [his] system." ECF No. 5, page 27. Plaintiff was diagnosed with an impacted bowel by an unnamed nurse at Crawford County Correctional Facility, and was transported to Meadville Medical Center for medical treatment. While at the hospital, Plaintiff alleges that he was not examined by any doctor, but was examined by two nurses. He was given x-rays and prescribed with Miralax and Magcitrate after being diagnosed with constipation. Plaintiff avers that he was misdiagnosed "due to not properly testing me by means of cat scan, colonoscopy, and needed surgery." Id. at page 28.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference

on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at *3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 34, 38 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 987 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician

exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F .2d 533, 575 n. 2 (3d Cir.1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

Plaintiff has not made any allegation to factually support the personal involvement and/or acquiescence of Defendant Lewis in the alleged inadequate medical care Plaintiff received while detained at Crawford County Correctional Facility. See footnote 5. Even if Plaintiff could factually support Defendant Lewis' personal involvement in the inadequate medical care, he cannot state a claim upon which relief may be granted. Non-medical prison officials, such as Defendant Warden Lewis, cannot be

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official

> [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.). In other words, a non-medical supervisory official may be held liable if there was "knowledge of malicious' and sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D.Pa.), interpreting Spruill, 372 F.3d at 236–237.

In his capacity as the Warden, Defendant Lewis is not deliberately indifferent if he failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Defendant Lewis is entitled to rely on the opinion of medical professionals even if Plaintiff grieved the inadequacy of his medical treatment. See Henderson, 2006 WL 3761998. Accordingly, the motion to dismiss should be granted in this regard.

Since the filing of the dispositive motion by these Defendants, Plaintiff has twice attempted to amend his complaint. ECF Nos. 82, 116, 128. None of these proposed amendments have overcome the deficiencies in the original complaint, and so any further attempt to amend the complaint as to these moving Defendants should be denied as futile. See Federal Rules of Civil Procedure 15(a)(2) (stating that "the court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason--such as […] futility of amendment ….-- the leave sought should, as the rules require, be freely given.").

Furthermore, as all of the federal claims against these Defendants should be dismissed, this Court should decline to exercise supplemental jurisdiction over the state law claims against

them. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended the motion to dismiss filed by Defendants Alizzeo, Lewis, DiGiacomo and Schultz [ECF No. 44] be granted. The Clerk of Courts should be directed to terminate these Defendants from the docket.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 12, 2012