IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN RICHARD COUDRIET,         )
    Plaintiff,                  )   Civil Action No. 11-185 Erie
                                )
v.                              )   District Judge McLaughlin
                                )
ANTHONY VARDARO, et al,         )   Magistrate Judge Baxter
    Defendants.                 )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
as to the motion to dismiss filed by Defendant Saavedra

**I.   RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Saavedra [ECF No. 73, 149] be granted. The Clerk of Courts should be directed to terminate Defendant Saavedra from the docket.

**II.   REPORT**

  **A.   Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, originally filed this civil rights action on September 1, 2011. Plaintiff names the following as Defendants to this action: the Honorable Anthony Vardaro of the Crawford County Court of Common Pleas; Warden Brian Coleman; Gary Alizzeo, Esquire; Chief of Police John Rictor; Assistant District Attorney Paula DiGiacomo; District Attorney Francis Schultz; Nurse Matthew Lewicki; Dr. Mark Casteel, Dr. Michael Herbik; Warden Tim Lewis; Bail Bond Agent Trace McCracken; Magistrate Judge Michael

1

Rossi of the Magisterial District Court; Counselor Jamiee Gaster; P.S.S. Debra Husarchik; Psychologist Gary Gallucci; and Psychiatrist Peter Saavedra.[1]

Plaintiff alleges that his state and federal constitutional rights have been violated in numerous ways by the named Defendants and seeks relief under 42 U.S.C. § 1983. ECF No. 5. This Report and Recommendation is limited to a discussion of the allegations involving Defendant Saavedra for actions that occurred during Plaintiff's incarceration at SCI Fayette.

In his complaint, Plaintiff provides a lengthy and detailed explanation of his version of events, only a portion of which relate to Defendant Saavedra. Plaintiff explains that his first contact with Dr. Saavedra, a psychiatrist, was around January of 2009. Plaintiff complains that while he was incarcerated at SCI Fayette, Saavedra fraudulently diagnosed him with paranoia and gave him anti-psychotic medications for the treatment of psychosis. ECF No. 5, ¶¶ 75, 109. Plaintiff alleges that he was confined against his will and forced to take medications he did not want. Id. at ¶ 109. Plaintiff believes that Saavedra's actions were meant to discredit Plaintiff's claims that the other named Defendants had conspired to unlawfully incarcerate him. Id. Plaintiff alleges that Defendant Saavedra's actions violate his constitutional rights under both the state and federal constitutions.

Furthermore, Plaintiff alleges that in December 2009/January 2010 (while temporarily housed at Crawford County Correctional Facility) for a PCRA hearing, a fellow inmate poisoned him with acid-laced vanilla cake. Plaintiff alleges that his "feces or stool was gathering around the acid frosting eating away at the wall of [his] colon until the colon became impacted with

---

[1] Defendants Vardaro, Rossi, Alizzeo, DiGiacomo, Schultz, and Lewis have been previously dismissed from this case by court orders (see ECF Nos. 146, 151, 160 and 161), while the claims against Defendant Casteel have been voluntarily withdrawn by Plaintiff (see ECF No. 145). The docket reflects that Defendants Gaster and McCracken have not been served with a copy of the complaint. See ECF Nos. 17, 18.

2

stool, feces, and [he] was throwing up food because it would not pass through [his] system." Id. at ¶¶ 94-86. Plaintiff alleges that while he had a physical injury, upon his return to SCI Fayette, Defendant Saavedra misdiagnosed his illness as mental illness causing Plaintiff to take psychotropic medications. Id. at ¶ 109. Plaintiff also alleges the Defendant Saavedra sent him to Rockview MHU under the pretense of a mental illness diagnosis. Id. Lastly, Plaintiff alleges that Defendant Saavedra practiced psychiatry without a license. Id. As relief for these and other alleged constitutional violations, Plaintiff seeks monetary damages, as well as his freedom from incarceration[2]. Id. at ¶¶ 113-14.

In response to the Complaint, several Defendants filed dispositive motions. By Order entered March 9, 2012, this Court granted Plaintiff's request for the appointment of counsel and directed the Clerk of Courts to seek legal representation for Plaintiff. ECF No. 121. During the pendency of this process, this case was administratively closed[3] and all filing deadlines were held in abeyance. Following at least three Declinations of Request for Appointment by attorneys who reviewed the pleadings in this case, this Court re-opened this case and informed Plaintiff that he will be representing himself in this matter.

Since the filing of the dispositive motions, Plaintiff has twice attempted to amend his complaint. ECF No. 82, 116, 128. The motions to amend were denied and Defendant Saavedra renewed his motion to dismiss against the original complaint. See ECF No. 153. Plaintiff has filed a brief in opposition to the pending motion to dismiss. ECF No. 88. The matters raised in these motions to dismiss are fully briefed and are ripe for disposition by this Court.

---

[2] To the extent that Plaintiff seeks release from incarceration, his claims are not cognizable under § 1983 and his exclusive remedy is a petition for writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) citing Preiser v. Rodriquez, 411 U.S. 475, 489 (1973) and Wolff v. McDonnell, 418 U.S. 539, 554 (1974).

[3] Despite the administrative closing of this case, Plaintiff continued to file pleadings and documents including an appeal to the United States Court of Appeals for the Third Circuit.

### B. Standards of Review

#### 1. *Pro se* litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

#### 2. Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint

must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3. Motion for summary judgment pursuant to Rule 56[4]

Defendant Saavedra has submitted evidence in support of his motion to dismiss. Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

---

[4] By Order dated December 29, 2011, Plaintiff was notified, pursuant to the requirements of Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), that this Court may convert the motion to dismiss into a motion for summary judgment. ECF No. 77.

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

Under Rule 56, a party opposing a motion for summary judgment must cite to specific materials in the record that demonstrate the existence of a disputed issue of material fact. See Fed.R.Civ.P. 56(c)(1)(A). A material fact is a fact that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 249. "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary

judgment). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).[5]

### C. The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Defendant Saavedra argues for dismissal of this case based on Plaintiff's failure to Comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144

---

[5] When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson, 477 U.S. at 255. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). However, a court need not "turn a blind eye to the weight of the evidence." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

(1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps

---

[6] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

9

settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis of Exhaustion

In support of the presently pending motion to dismiss, Defendant Saavedra has provided evidence in support of his position that Plaintiff has failed to exhaust his administrative remedies. As noted above, Plaintiff was given notice that this evidence requires the Court to convert the motion to dismiss into a motion for summary judgment. Plaintiff has offered no contrary evidence[8], as he must in order to defeat a fully supported motion for summary judgment. See Fed.R.Civ.P. 56(c)(1)(A).

Defendant Saavedra has produced the records maintained by the Department of Corrections' Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). ECF No. 74-1, pages 1-48. This record is the entire SOIGA file for Plaintiff. Defendant Saavedra asserts that although Plaintiff may have filed other grievances at individual prisons, the SOIGA file represents every grievance Plaintiff attempted to exhaust through the final level of review.

Within Plaintiff's SOIGA file, there are nine grievances Plaintiff presented at the highest level of review. Only two of these nine grievances mention Defendant Saavedra or any subject matter which could be liberally construed as related to the subject matter of Plaintiff's legal claims against Saavedra raised in this lawsuit.

In Grievance Number 316847 (filed on May 5, 2010), Plaintiff wrote:

> I am writing this grievance on my own behalf, refilled [sic] from one rejected on 4-27-2010 #316149. I was having a hard time walking and continuously standing which was after a while in the RHU became progressing problem to where eventually brought great pain to where I was not getting meds or food unable to in pain. I was taken to the MHU for evaluation of symtoms [sic], as stated noting was psycally [sic] wrong with me. A short period of limited aleaveation [sic] on the or around the 15th of April symtoms [sic] climaxed over a period of time. I asked to speak to Dr. Comore a psychologist there because the paxel that was prescribed for depression being diagnosed with paranoia all parting to mental

---

[8] In his Opposition Brief, Plaintiff argues that he is not subject to the requirements of the PLRA because he "was never accused of, or convicted of, violations of criminal law as the tribunal without jurisdiction it was held in was absent subject matter jurisdiction as they were absent all jurisdiction as Plaintiff is actually innocent." ECF No. 88, page 12. Plaintiff's argument in this regard is patently frivolous.

11

> issues didn't seem to help with my physical condition legs and in conjunction [illegible word] from stomach. It again became enabling [sic] to point to get meds. Soon after couldn't get up going the distance to get meds or food: meds which is 100 mg Colace 2ice [sic] a day, Konsyl, a bulk forming laxative, and Bental, a painkiller 2ice [sic] a day. All observation camera. I was discharged from the MHU and observation in condition as I was forced to walk a very painful nearly collapsing and disorientated [sic]. [portion illegible]

ECF No. 74-1, page 16. Plaintiff indicates that he contacted Saavedra and that "no resolve currently writing health care administrator, informed officers here in RHU." Id.

Plaintiff appealed the denial of his initial grievance to the Superintendent, and then that denial to the SOIGA. Id. at pages 1-16. At the SOIGA level, Plaintiff's appeal was dismissed on procedural grounds in that he failed to include all necessary documents in a timely manner. Id. at pages 2, 6. This dismissal based upon Plaintiff's failure to follow the procedural rules of the Department of Corrections constitutes a procedural default, and therefore, constitutes a failure to exhaust. See Woodford, 548 U.S. at 83 (the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."); see also Spruill, 372 F.3d at 228-29.

Next, Plaintiff filed Grievance Number 352093 on January 28, 2011, in which he complained about the revocation of his single-cell (or "Z-code") status by the Unit Team and/or Dr. Gallucci. Id. at pages 18-19. Plaintiff does not mention Defendant Saavedra in the initial grievance, but mentions him in the Appeal to the Superintendent to corroborate his claim that he needs the continuance of his Z-code status. Plaintiff's mention of Saavedra in this manner at the second level of review is not sufficient to exhaust any legal claim against him. Moreover, because this grievance was dismissed at the SOIGA level due to Plaintiff's failure to comply with procedural rules, Plaintiff has committed a procedural default of this grievance.

While the remainder of the grievances in Plaintiff's SOIGA file challenge the actions of other Defendants listed in this action, none of them references Defendant Saavedra or the claims against him.

Because Plaintiff has failed to exhaust his administrative remedies in accordance with the PLRA, summary judgment should be granted in favor of Defendant Saavedra.

Plaintiff has twice attempted to amend his complaint. ECF Nos. 82, 116, 128. None of these proposed amendments have overcome the deficiencies of the original complaint, and so any further attempt to amend the complaint as to Defendant Saavedra should be denied as futile. See Federal Rules of Civil Procedure 15(a)(2) (stating that "the court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason--such as […] futility of amendment ….-- the leave sought should, as the rules require, be freely given.").

Furthermore, as all of the federal claims against this Defendant should be dismissed, this Court should decline to exercise supplemental jurisdiction over the state law claims of medical malpractice against him. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendant Saavedra [ECF No. 73, 149] be granted. The Clerk of Courts should be directed to terminate Defendant Saavedra from the docket.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See <u>Brightwell v. Lehman</u>, 637 F.3d 187, 194 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 27, 2013