IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN RICHARD COUDRIET, | ) | |
|     Plaintiff, | ) | Civil Action No. 11-185 Erie |
| | ) | |
|     v. | ) | District Judge McLaughlin |
| | ) | |
| ANTHONY VARDARO, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
as to the motions to dismiss
filed by Defendants Berrier, Coleman, Gallucci, Husarchik, and Herbik

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants Berrier, Coleman, Gallucci and Husarchik [ECF No. 38, 148] be GRANTED; the motion to dismiss filed by Defendant Herbik [ECF No. 58, 152] be GRANTED.

The Clerk of Courts should be directed to terminate these Defendants from the docket.

**II.    REPORT**

  **A.  Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, originally filed this civil rights action on September 1, 2011. Plaintiff names the following as Defendants[1] to this action: the Honorable Anthony

---

[1] Plaintiff asserts his claims against each of the named Defendants in both their official and individual capacities. To the extent that he seeks to sue Defendant Rictor in his official capacities, such claims should be dismissed as the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. <u>Laskaris v. Thornburgh</u>, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); <u>Mt. Healthy City</u>

1

Vardaro of the Crawford County Court of Common Pleas; Warden Brian Coleman; Gary Alizzeo, Esquire; Chief of Police John Rictor; Assistant District Attorney Paula DiGiacomo; District Attorney Francis Schultz; Nurse Matthew Lewicki; Dr. Mark Casteel, Dr. Michael Herbik; Warden Tim Lewis; Bail Bond Agent Trace McCracken; Magistrate Judge Michael Rossi of the Magisterial District Court; Counselor Jamiee Gaster; P.S.S. Debra Husarchik; Psychologist Gary Gallucci; and Psychiatrist Peter Saavedra.[2]

Plaintiff alleges that his state and federal constitutional rights have been violated in numerous ways by the named Defendants and seeks relief under 42 U.S.C. § 1983. ECF No. 5. This Report and Recommendation is limited to a discussion of the allegations involving Defendants Berrier, Coleman, Gallucci, Husarchik, and Herbik for actions that occurred during Plaintiff's incarceration at SCI Fayette. Defendants Berrier, Coleman, Gallucci, Husarchik are Department of Corrections employees and are represented by the Office of the Attorney General. Dr. Herbik is represented separately.

As to the Department of Corrections Defendants, Plaintiff alleges that: 1) Superintendent Brian Coleman violated Plaintiff's Eighth Amendment rights by keeping him incarcerated under illegal sentencing orders; 2) Coleman and Health Care Administrator Berrier were deliberately indifferent to his medical needs in violation of the Eighth Amendment; and 3) Defendants Gallucci and Husarchik committed extortion in using the leverage of an offer of transfer to a prison closer to his home to induce him to participate in a sexual offenders program that he was

---

Board of Educ. v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity).

[2] Defendants Vardaro, Rossi, Alizzeo, DiGiacomo, Schultz, and Lewis have been previously dismissed from this case by court orders (see ECF Nos. 146, 151, 160 and 161), while the claims against Defendant Casteel have been voluntarily withdrawn by Plaintiff (see ECF No. 145). The docket reflects that Defendants Gaster and McCracken have not been served with a copy of the complaint. See ECF Nos. 17, 18.

not legally required to attend. Id. at ¶¶ 106, 108, 111. As to Defendant Herbik, Plaintiff alleges that he misdiagnosed and mistreated Plaintiff's medical needs. Id. at ¶¶ 18, 111. As relief for these and other alleged constitutional violations, Plaintiff seeks monetary damages, as well as his freedom from incarceration[3]. Id. at ¶¶ 113-14.

In response to the Complaint, several Defendants filed dispositive motions. By Order entered March 9, 2012, this Court granted Plaintiff's request for the appointment of counsel and directed the Clerk of Courts to seek legal representation for Plaintiff. ECF No. 121. During the pendency of this process, this case was administratively closed[4] and all filing deadlines were held in abeyance. Following at least three Declinations of Request for Appointment by attorneys who reviewed the pleadings in this case, this Court re-opened this case and informed Plaintiff that he will be representing himself in this matter.

Since the filing of the dispositive motions by these Defendants, Plaintiff has twice attempted to amend his complaint. ECF No. 82, 116, 128. The motions to amend were denied and these Defendants renewed their motions to dismiss against the original complaint. See ECF Nos. 148, 152. Plaintiff has filed briefs in opposition to the pending dispositive motions. See ECF Nos. 81, 86. The matters raised in these motions to dismiss are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro se* litigants

---

[3] To the extent that Plaintiff seeks release from incarceration, his claims are not cognizable under § 1983 and his exclusive remedy is a petition for writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) citing Preiser v. Rodriquez, 411 U.S. 475, 489 (1973) and Wolff v. McDonnell, 418 U.S. 539, 554 (1974).

[4] Despite the administrative closing of this case, Plaintiff continued to file pleadings and documents including an appeal to the United States Court of Appeals for the Third Circuit.

3

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal,

4

___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Plaintiff has attached pages and pages of exhibits to his pleadings. However, the use of these exhibits by this Court does not convert the motions to dismiss for failure to state a claim into motions for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

### C. The Prison Litigation Reform Act

#### 1. The Exhaustion Requirement

Defendant Herbik[5] argues for dismissal of this case based Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

---

[5] The Department of Corrections Defendants have not moved to dismiss on this basis.

6

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the

---

[6] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

7

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the

8

Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis of Exhaustion

In support of his argument for dismissal, Defendant Herbik only cites Plaintiff's pleadings and does not provide any evidence in support of his argument. The case law is clear that the failure to exhaust must be asserted and proven by the defendants and it is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. at 217 ("...failure to exhaust is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Here, the failure to exhaust cannot provide a basis for the dismissal of this case against Defendant Herbik at this stage of the proceedings as Defendant Herbik has not met his burden to demonstrate that Plaintiff has not exhausted. It is not Plaintiff's burden to prove that he has exhausted any of his claims at this point in the litigation. Ray. This Court must recommend the denial of the motion to dismiss for failure to exhaust at this time.

### D. Deliberate Indifference Claims against Coleman, Berrier and Herbik

#### 1. Standard of Review

Plaintiff alleges that Superintendent Coleman, Health Care Administrator Berrier, and Dr. Herbik violated his rights under the Eighth Amendment. Plaintiff claims that Coleman and Berrier acted with deliberate indifference to his medical needs, while Dr. Herbik misdiagnosed and mistreated his medical needs.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at *3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 34, 38 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 987 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d

1077, 1081 (3d Cir. 1976).  See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment.").  "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).  Deliberate indifference is generally not found when some level of medical care has been offered to the inmate.  Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment.  United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n. 2 (3d Cir.1979).

### 2. Personal Involvement of Coleman and Berrier

Defendants Coleman and Berrier argue that Plaintiff has failed to state a claim against them because he has failed to allege their personal involvement in any alleged constitutional violations.  More specifically, Defendants Coleman and Berrier argue that Plaintiff's allegations against them are asserted: (a) in their supervisory capacities; (b) as a result of receiving or responding to grievances or complaints; (c) for failure to act after the fact; (d) in conclusory allegations of "acquiescence" in wrongdoing; or (e) in bald allegations of conspiracy.  See ECF No. 39, citing Complaint at ¶¶ 108, 111.  This Court agrees.

11

Plaintiff has not made any allegation to factually support the personal involvement and/or acquiescence of Defendants Coleman and Berrier in the allegedly inadequate medical care.[8] Even if Plaintiff could factually support the personal involvement of Coleman and Berrier, he has failed to state a claim upon which relief may be granted. Non-medical prison officials, such as Defendants Superintendent Coleman and Health Care Administrator Berrier, cannot be

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.). In other words, a non-medical supervisory official may be held liable if there was "knowledge of malicious' and sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D.Pa.), interpreting Spruill, 372 F.3d at 236–237.

---

[8] When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho, 423 F.3d at 353, quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell, 436 U.S. 658 (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action).

In his capacity as the Superintendent, Defendant Coleman is not deliberately indifferent if he failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Furthermore, in her capacity as the Health Care Administrator, Defendant Berrier[9] is not deliberately indifferent if she failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Coleman's and Berrier's reliance on the opinion of medical professionals even as Plaintiff grieved the alleged inadequacies in his medical treatment does not legally indicate that they possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon them. See Henderson, 2006 WL 3761998. Accordingly, the deliberate indifference claims against Defendants Coleman and Berrier should be dismissed.

### 3. Personal Involvement of Defendant Herbik

Plaintiff's complaint only references Defendant Herbik in two paragraphs. Plaintiff alleges:

> 18. […] Herbik, is a Doctor of Orthopedic Medicine at SCI Fayette, and is legally liabil [sic] for his illegal acts of violating my constitutional rights to adequate medical care by misdiagnosing [sic] me no diagnosis of an illness that required surgery and committed deliberate indifference. In mistreatment of my medical needs and malpractice along with false false [sic] medical record creating[10] for

---

[9] Further, it is the not responsibility of the Health Services Administrator to order the medical treatments sought by inmates. The responsibilities of the Health Services Administrator include managing the Health and Dental Departments of the prison, overseeing nursing staff, and overseeing independent contractors, such as PHS, Inc. See Josey v. Beard, 2009 WL 1858250 (W.D. Pa.).

[10] Liberally construing the *pro se* filings, Plaintiff's allegation of falsifying records revolves around his belief that he should not have been sent to SCI Rockview. At ¶ 93, Plaintiff alleges:

> [T]he Psych. Department thought it was all mental because I was not diagnosed with anything. I was 303'ed to the Mental Health Housing Unit or MHU in Rockview prison by Court Order where I spent 20 to 30 days and the pain of the shackling to my abdomen and legs for transfer was intense. Refer to Exhibit X –

13

> intentional harm pain and suffering and denied proper medical care and testing. …
>
> 111. […] Herbik's […] acts of deliberate indifference to medical needs by misdiagnosing me and not properly diagnosing me at all and giving me medication for such without diagnosis and pain and suffering for not properly treating and testing of serious medical condition that required surgery is malpractice. …

ECF No. 5.

Again, Plaintiff has failed to allege the personal involvement of this Defendant. In his complaint, Plaintiff does not provide any factual support for his bald averment that Herbik's actions resulted in a violation of Plaintiff's constitutional rights. In his Opposition Brief, Plaintiff explains his claim against Herbik a bit more than in the complaint. Plaintiff characterizes Herbik's action as one of misdiagnosis: "The deliberate indifference came in not properly diagnosing Plaintiff with the serious medical need. … I[]t is clear alone of the continuation of a swollen prostate, that the diagnosis was wrong which was constipation which medication caused serious pain and suffering." ECF No. 81, page 15. Plaintiff's claims sound in medical malpractice and do not rise to the level of a constitutional violation. See <u>Brown</u>, 903 F.2d at 278 ("While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights."). Accordingly, Plaintiff has failed to

---

> Letter from attorney stating they thought it was mental and not physical. I returned to SCI Fayette the hole or RHU. I wrote a grievance and the response was from S. Berrier R.N. 1) You have been evaluated by the medical department as well as mental health professionals. 2) You need to cooperate with staff and discontinue behaviors which are detrimental to your well-being. 3) You have no need for a colonoscopy and you are not in need of a wheelchair. 4) Your request for compensatory damages along with this frivolous grievance is denied. 5) You need to work with psychology department to move toward wellness. All a lie.

ECF No. 5, ¶ 93. Plaintiff does not mention Herbik.

state an Eighth Amendment claim against Defendant Herbik and the motion to dismiss should be granted.

### E. Illegal Detention Claim against Superintendent Coleman

Next, Plaintiff alleges that because his conviction is illegal, his incarceration at SCI Fayette by Superintendent Coleman pursuant to the invalid court orders violates his constitutional rights. In this regard, the actions of Defendant Superintendent Coleman are insulated from liability by the doctrine of quasi-judicial immunity.

Judicial immunity[11] is an "immunity from suit, not just from an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial officers are immune from suit arising out of their official duties. Stump v. Sparkman, 435 U.S. 349 (1978); Piskanin v. Hammer, 2005 WL 613644 (E.D.Pa., 2005) (applying judicial immunity to "district justice"). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority...." Sparkman 435 U.S. at 356. See also Benn v. First Judicial District, 426 F.3d 233 (3d Cir. 2005) (applying Eleventh Amendment immunity to courts). See also Seigert v. Gilley, 500 U.S. 226, 231 (1991) ("One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."); In Re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000) ("Absolute immunity creates not only protection from liability, but also a right not to stand trial.").

---

[11] Absolute immunity is a purely legal question. Banks v. Mozingo, 423 Fed.Appx 123, at *2 (3d Cir. 2011) quoting In Re Montgomery County, 215 F.3d 367, 370 (3d Cir. 2000).

Officials acting pursuant to a facially valid[12] court order have a quasi-judicial absolute immunity for actions taken to execute that order. Lepre v. Tolerico, 156 Fed.Appx 522 (3d Cir. 2005) quoting Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (holding that employees acting pursuant to a valid bench warrant entitled to absolute immunity); Villanueva v. County of Montgomery, 1994 WL 396368, at *2 (E.D. Pa. 1994) (sheriff's deputies absolutely immune from liability arising from the execution of a facially valid bench warrant). See also Richman v. Sheahan, 270 F.3d 430, 436 (7th Cir. 2001) ( "[W]e have recognized absolute immunity for law enforcement officers when the challenged condition [ ... ] was specifically ordered by the judge."); Patterson v. Von Riesen, 999 F.2d 1235, 1240 (8th Cir. 1993) (prison wardens absolutely immune from liability for continuing to incarcerate prisoner pursuant to valid court order); Valdez v. City and County of Denver, 878 F.2d 1285 (10th Cir. 1989) ("[E]nforcing a court order or judgment is intrinsically associated with a judicial proceeding.").

Accordingly, the motion to dismiss should be granted as to this claim against Defendant Coleman.[13]

---

[12] "Facially valid does not mean lawful[;] [a]n erroneous order can be valid." Abdeo v. Borough of South Plainfield Police Dept., 2010 WL 547603, at *2 (D.N.J. 2010) quoting Wolfe v. City of Pittsburgh, 140 F.3d 236, 240 (3d Cir. 1998).

[13] Alternatively, this claim is also barred by the favorable termination requirement of Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in the original). Thus, a court faced with a suit for damages under § 1983 must first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his ... sentence." Id. If so, the complaint must be dismissed "unless the plaintiff can demonstrate that the ... sentence has already been invalidated." Id. In short, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target

### F. Claim Against Gallucci and Husarchik

Finally, Plaintiff alleges that Defendants Gallucci and Husarchik, mental health professionals at SCI Fayette, used "illegal acts of extortion using Plaintiff's children as leverage along with transfer closer to home illegally for Plaintiff's illegal participation in sex offender groups for Count Two that is false and that Plaintiff is innocent of is a continuation of fraud and the psychological treatment of which is abuse." ECF No. 5, ¶ 108. Plaintiff does not provide dates when these alleged acts occurred, but in his opposition brief agrees that his claim is barred by the statute of limitations. See ECF No. 86, page 24.

Accordingly, this claim should be dismissed.

### G. Futility of Amendment

Plaintiff has twice attempted to amend his complaint. ECF Nos. 82, 116, 128. None of these proposed amendments has overcome the deficiencies of the original complaint, and so any further attempt to amend the complaint as to these Defendants should be denied as futile. See Federal Rules of Civil Procedure 15(a)(2) (stating that "the court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason--such as […] futility of amendment ….-- the leave sought should, as the rules require, be freely given.").

---

of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)(emphasis in original).

Here, no matter how Plaintiff attempts to characterize his challenge, he cannot escape the fact that he is ultimately calling into question the duration of his confinement. Since it is clear from Plaintiff's allegations that neither the duration of his confinement nor his sentence has been otherwise invalidated, Plaintiff's constitutional claims are barred by Heck and should be dismissed.

Furthermore, as all of the federal claims against these Defendants should be dismissed, this Court should decline to exercise supplemental jurisdiction over the state law claims of medical malpractice against him. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendants Berrier, Coleman, Gallucci and Husarchik [ECF No. 38, 148] be GRANTED; the motion to dismiss filed by Defendant Herbik [ECF No. 58, 152] be GRANTED.

The Clerk of Courts should be directed to terminate these Defendants from the docket.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 19, 2013